IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

ZOE MAZGAY,

    Plaintiff,

v.

COLORADO INDUSTRIAL PACKAGING, LLC, a Delaware limited liability company; and CARL NICKEL, individually,

    Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Zoe Mazgay ("Plaintiff"), by and through counsel, Leventhal Swan Taylor Temming PC, complains as follows:

**NATURE OF THE ACTION**

1. This action is brought by Plaintiff against Defendants for failure to pay overtime during the last three years, plus any period of tolling.

2. This case is brought under 29 U.S.C. §§ 201 *et seq.* of the Fair Labor Standards Act of 1938 ("FLSA"). Plaintiff alleges that Defendants violated the FLSA, 29 U.S.C. §§ 201 *et seq.*, by failing to pay her required overtime compensation.

3. Plaintiff also asserts a claim for retaliation under 29 U.S.C. § 215(a)(3) of the FLSA.

4. Plaintiff asserts claims pursuant to the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order"), 7 CCR §§ 1103-1 *et seq.*, and the Colorado Wage Act, C.R.S.

§§ 8-4-101 ("CWA") *et seq*. Plaintiff alleges that Defendants violated the COMPS Order by failing to pay her (a) the minimum salary required by law, and (b) overtime compensation at the applicable rate as required by law. Plaintiff further alleges that Defendants violated the CWA by failing to pay all earned, vested, and determinable regular and overtime wages.

5. Plaintiff also alleges that Defendants retaliated and discriminated against her in violation of the COMPS Order and CWA.

6. Plaintiff further alleges claims under the COMPS Order and CWA for Defendants' failure to reimburse Plaintiff for business expenses incurred within the scope of her employment with Defendants for Defendants' benefit.

7. Plaintiff asserts a state common law claim for retaliatory discharge.

## JURISDICTION AND VENUE

8. This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff alleges a claim under the FLSA.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the FLSA claim that they form part of the same case or controversy.

10. Defendants are subject to personal jurisdiction in this District because this action arises out Defendants' illegal pay practices and other illegal actions that caused damages to Plaintiff in the State of Colorado.

11. Defendants also availed themselves of the privilege of conducting substantial business in Colorado, where Plaintiff resides and worked for Defendants, and the acts and omissions alleged herein arise out of Defendants' activities in Colorado.

12. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this District.

## THE PARTIES

13. Plaintiff is, and was at all times relevant to this action, an adult individual domiciled in Colorado.

14. Defendant Colorado Industrial Packaging, LLC ("CIP") is a Delaware limited liability company that operates in Colorado. Defendant CIP maintains two offices. CIP's primary office is located at 2860 North El Paso Street, Colorado Springs, Colorado 80907. CIP's other office is located at 3700 Havana Street, Suite 307, Aurora, Colorado 80239. CIP is registered to conduct business in Colorado as a foreign limited liability company.

15. CIP is primarily in the business of "providing standard and custom packaging supplies and solutions" including "custom box manufacturing, foam and hexacomb fabrication, packaging supplies, and engineering and design, electronics packaging, thermal packaging, retail packaging, military-spec packaging," and related products and services.[1]

16. Defendant Carl Nickel ("Defendant Nickel") is a resident of Colorado and is the Chief Executive Officer ("CEO") of CIP. Defendant Nickel oversees all of CIP's operations including business strategy and daily management, inventory, staffing, compliance, and budgeting. He is also responsible for related executive functions. Defendant Nickel was and is vested with the authority to carry out the wage and hour policies of CIP.

## STATEMENT OF FACTS

17. CIP provides packaging products and services to customers under the direction of

---

[1] https://cippack.com/about-us/ (last accessed January 10, 2025).

Defendant Nickel.

18. Plaintiff worked for Defendants as a Purchaser. As a Purchaser, Plaintiff was required to follow standardized processes involving well-established techniques and procedures implemented by Defendants.

19. Plaintiff worked within closely prescribed limits imposed by Defendants. Defendants employed Plaintiff and established her pay practices.

20. Plaintiff was classified as an exempt, salaried employee and was compensated by salary for all hours worked each pay period, including those over 40 in a work week and/or over 12 in a work day.

21. Defendants did not require Plaintiff to clock in and out for shifts.

22. Plaintiff began her employment as a Purchaser on or about January 29, 2024. Plaintiff was terminated by Defendants, specifically by Defendant Nickel, on January 3, 2025.

23. Plaintiff's starting salary was $50,000 annually paid every other week. On or about November 1, 2024, Plaintiff received a raise from $50,000 to $62,000 annually. Plaintiff's job title and duties remained the same.

24. Plaintiff's job duties as Purchaser included searching for potential suppliers of raw material, contacting suppliers, and passing along supplier information to CIP's executives, including Defendant Nickel.

25. Plaintiff did not possess authority to negotiate quantity, price, or other specifics of raw material orders. Defendants, specifically Defendant Nickel, made all decisions pertaining to supply orders (*i.e.*, choice of supplier, quantity, price, and payment terms).

26. Plaintiff mostly performed secretarial duties such as answering general business

phone and email inquiries, ordering office supplies, and various data entry tasks as assigned by Defendants.

27. Plaintiff worked at both of CIP's facilities (*i.e.*, Colorado Springs and Aurora). Plaintiff regularly worked at both of CIP's facilities in the same day. Plaintiff would commute back and forth between the two facilities. Plaintiff was not directly paid for her travel and commute time between CIP's offices even though this travel was required by Defendants for Plaintiff's job.

28. Plaintiff reported to Tracy Garth and Al Brown, the General Managers of CIP's Colorado Springs and Aurora locations, respectively. Plaintiff also reported to Defendant Nickel.

29. Plaintiff did not possess any managerial or supervisory responsibilities as a Purchaser. Plaintiff did not have any direct reports or subordinates.

30. Plaintiff did not (a) manage or supervise any other employees of Defendants, (b) direct any department within Defendants' business, or (c) direct any of Defendants' business operations.

31. Plaintiff's job duties and tasks were highly regulated and controlled, sometimes on a step-by-step and incremental level, by Defendants. Plaintiff was prohibited from exercising discretion and independent judgment as to matters of significance within Defendants' operations.

32. Plaintiff was directed by Defendants to strictly adhere to corporate policies implemented by Defendants.

33. Plaintiff regularly worked more than 40 hours each week (often between 45 and 60 hours each week), but Plaintiff never received overtime premiums at one and one-half her regular rate of pay for hours worked over 40 in individual work weeks and/or 12 hours in a work day.

34. The uniform and common practices and policies implemented by Defendants,

5

including the job duties and compensation structure, applied to Plaintiff.

35. Due to the uniform and common policies and practices implemented by Defendants, most, if not all, of Plaintiff's job duties as described were determined by Defendants.

36. Defendants misclassified Plaintiff as exempt from overtime compensation and improperly applied a salary exemption to Plaintiff.

37. On or about December 9, 2024, Plaintiff submitted a written complaint to Defendants concerning her salary and overtime pay. Plaintiff's complaint was submitted to Defendant Nickel, Tracy Garth, and Al Brown. Plaintiff informed Defendants that her $50,000 salary was below the minimum salary threshold for exempt employees established by the COMPS Order.[2]

38. Plaintiff advised Defendants that because she had not been paid the minimum salary required to be classified as exempt from overtime under the COMPS Order, she was entitled to overtime pay from the beginning of February 2024 to the end of October 2024.

39. Before Plaintiff submitted her wage complaint, she had discussed the issue with a co-worker (Gaylene Carter) to ascertain the best way to approach Defendants about the issue.

40. Plaintiff provided Defendants a summary of overtime work performed between February 2024 and October 2024. Plaintiff informed Defendants she was owed 382 hours of overtime pay.

41. After Plaintiff made the wage complaint to Defendants, Defendant Nickel demanded Plaintiff "[n]ot to take an adversarial approach" to discussions about the wage complaint

---

[2] As of January 1, 2024, the COMPS Order set the minimum salary for exempt employees at $55,000. 7 CCR § 1103-2.5.1.

6

and to "treat [Defendants] with as much respect as [Defendants] had shown [Plaintiff]."

42. On or about December 23, 2024, Tracy Garth informed Plaintiff that Defendants would provide her a check representing unpaid overtime worked between February 2024 and October 2024. When Defendants provided Plaintiff the check for unpaid overtime, Plaintiff was provided with a receipt document. The receipt did not contain any release language or other terms.

43. Plaintiff received her check on the morning of December 23, 2024 while at Defendants' Colorado Springs facility. Plaintiff left the Colorado Springs office later that morning to drive to the Aurora facility. Mr. Garth departed Colorado Springs for Aurora shortly after Plaintiff.

44. Also on December 23, 2024, another employee informed Plaintiff that this employee was also not being paid the minimum salary of $55,000 mandated by the COMPS Order. Plaintiff advised that employee to contact Defendants' payroll department.

45. Shortly after Plaintiff had arrived at Defendants' Aurora facility from Colorado Springs on December 23, 2024, Mr. Garth interrupted a meeting that was taking place in Plaintiff's office. Mr. Garth dismissed everyone except for Plaintiff and closed the door to Plaintiff's office.

46. Mr. Garth's initial question to Plaintiff was if she had spoken with another employee about overtime and salary issues. Plaintiff indicated she had done so earlier that day. Mr. Garth then informed Plaintiff she was suspended without pay effective immediately. Plaintiff asked Mr. Garth why she was suspended. Mr. Garth then told Plaintiff that he "had to suspend [Plaintiff]" per the instructions of Defendant Nickel.

47. Plaintiff was suspended without pay mere hours after receiving her overtime check from Defendants.

48. Following Plaintiff's meeting with Mr. Garth, Defendant Nickel informed Plaintiff she was suspended due to "a complaint about her behavior." Plaintiff was then escorted out of the building. Plaintiff had never previously been advised by Defendants about any complaint about her performance or behavior.

49. After Plaintiff left the office due to her suspension, Mr. Nickel emailed Plaintiff and told her "[w]e've received several complaints from several employees regarding your behavior. Unfortunately[,] these complaints are severe enough to warrant putting you on immediate suspension without pay." Defendant Nickel, attempting to distract from the timing of Plaintiff's suspension (*i.e.*, a couple of hours after Defendants provided Plaintiff with a check for overtime back pay), stated "this action is completely independent of the back pay that you received today, and will be treated as such."

50. On December 30, 2024, Defendant Nickel emailed Plaintiff claiming that the "complaints [about Plaintiff's behavior] involve you using marijuana and alcohol before and during work." Plaintiff responded and asked Defendant Nickel to "email all findings for my review." Defendant Nickel refused.

51. Plaintiff remained suspended without pay from December 23, 2024 to January 3, 2025.

52. On January 3, 2025, Defendants terminated Plaintiff. Defendant Nickel terminated Plaintiff via email, stating in part that Plaintiff was "being terminated for cause, for smoking Marijuana before, and during work, for attempting to have other employees do the same, and for

8

drinking wine while commuting during work hours from our Springs to our Denver facility."[3]

53. Plaintiff vehemently denies having consumed drugs or alcohol at work, on Defendants' premises, or having been under the influence of drugs or alcohol at work. Plaintiff also denies requesting any other employee of Defendants to consume drugs or alcohol at work.

54. Plaintiff's suspension and termination were acts of retaliation and discrimination arising from Plaintiff's wage complaint. Defendants never provided Plaintiff any evidence regarding drug or alcohol consumption at work.

55. Defendants' violations of the FLSA are not in good faith. Defendants are, and have been, well aware of their legal obligation to pay overtime compensation to Plaintiff.

56. Defendants retaliated and discriminated against Plaintiff for making a wage complaint pursuant to the FLSA, COMPS Order, and CWA. Defendants retaliated against Plaintiff for raising a wage complaint by (a) suspending her without pay for 12 days (including four paid holidays), and (b) terminating her.

57. Plaintiff is entitled to regular wages for the 12 days she was suspended without pay.

58. During Plaintiff's employment with Defendants, she incurred personal business expenses of more than $500 that Defendants failed to reimburse. Plaintiff incurred these business expenses within the scope of employment (*i.e.*, travel, gas and mileage, office supplies, etc.).

59. Plaintiff's use of her own money to subsidize Defendants' business expenses was:

a) for the primary benefit and convenience of the Defendants;

b) not for the benefit or convenience of Plaintiff;

---

[3] Plaintiff notes that she never entered into an employment contract with Defendants which designated any standard concerning "for cause" or "no cause" termination.

9

c) not reimbursed by Defendants; and

d) required without Plaintiff's written and revocable consent.

**<u>FIRST CLAIM FOR RELIEF</u>**
**FAIR LABOR STANDARDS ACT – 29 U.S.C. §§ 201 *et seq*.**

60. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

61. At all relevant times, Defendants have been, and continue to be, employers engaged in interstate commerce within the meaning of the FLSA.

62. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

63. At all relevant times, Defendants had gross annual revenues in excess of $500,000.

64. At all relevant times, Defendants did not pay Plaintiff overtime compensation for all overtime hours worked at legally mandated rates.

65. As a result of Defendants' failure to properly compensate Plaintiff, Defendants violated the FLSA.

66. As employers within the meaning of the FLSA, Defendants have a duty to create and maintain accurate records of employee hours. Defendants failed to do so.

67. The foregoing conduct, as alleged, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

68. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants unpaid overtime compensation, liquidated damages, Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, attorneys' fees, costs, and disbursements of this action pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT – 29 U.S.C. § 215(a)(3)

69. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

70. In direct retaliation for Plaintiff asserting her rights under the FLSA as described above, Defendants suspended Plaintiff without pay and then terminated her to discriminate against and punish Plaintiff for questioning Defendants' illegal pay practices including failure to pay overtime.

71. Pursuant to the FLSA, 29 U.S.C. §215(a)(3), it is illegal for an employer to retaliate against an employee for asserting rights under the statute.

72. Defendants' acts of retaliation against Plaintiff in response to assertion of her lawful FLSA rights violated the Fair Labor Standards Act, 29 U.S.C §215(a)(3).

## THIRD CLAIM FOR RELIEF
### COMPS ORDER #39 – 7 CCR §§ 1103 *et seq*.

73. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

74. At all relevant times, Plaintiff was employed by Defendants within the meaning of the COMPS Order.

75. Because Defendants were, at all relevant times, employers within the meaning of the FLSA, they were also employers within the meaning of the COMPS Order pursuant to 7 CCR § 1103-7-2.7.

76. Defendants violated the COMPS Order by failing to pay Plaintiff the minimum required salary established by law.

77. Defendants violated the COMPS Order by failing to pay Plaintiff all overtime compensation to which she was entitled at the legally required rates.

11

78. Plaintiff is entitled to recover from Defendants overtime compensation at the appropriate premium for all hours worked over 40 in a work week and 12 in a work day, any statutory penalties, Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, attorneys' fees, costs, and disbursements of this action pursuant to the COMPS Order.

## FOURTH CLAIM FOR RELIEF
## COMPS ORDER #39 – 7 CCR §§ 1103-8.5

79. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

80. In direct retaliation for Plaintiff asserting her rights under the COMPS Order as described above, Defendants suspended Plaintiff without pay and terminated her to discriminate against and punish Plaintiff for questioning Defendants' illegal pay practices, including failure to pay the minimum salary and overtime.

81. Pursuant to 7 CCR § 1103-8.5, it is illegal for an employer to "discriminate against any person for the purpose of reprisal, interference, or obstruction as to any actual or anticipated investigation, hearing, complaint, or other process or proceeding relating to a wage claim, right, or rule." 7 CCR § 1103-8.5

82. Defendants' acts of retaliation against Plaintiff in response to assertion of her lawful COMPS Order rights violated the COMPS Order, 7 CCR § 1103-8.5.

## FIFTH CLAIM FOR RELIEF
## COLORADO WAGE ACT – C.R.S. §§ 8-4-101 *et seq*.

83. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

84. At all relevant times, Plaintiff was employed by Defendants within the meaning of C.R.S. § 8-104-101(5).

85. Because Defendants were, at all relevant times, employers within the meaning of the FLSA, they were also employers within the meaning of the CWA pursuant to C.R.S. § 8-104-101(6).

86. The CWA defines wages as "[a]ll amounts for labor or service performed by employees," regardless of whether "the amount is fixed or ascertained by the standard of time." Wages, as defined by the CWA, are governed by the Act once the amounts are "earned, vested, and determinable." C.R.S. § 8-4-101(14)(a)(I)-(III).

87. Pursuant to the CWA, C.R.S. § 8-4-101(14)(a)(II)-(III), Plaintiff worked in excess of 40 in individual work weeks and/or 12 in a work day which required pay at one and one-half her regular hourly rates of pay.

88. Once Plaintiff worked hours above 40 in individual work weeks or 12 in individual work days, she was entitled to overtime compensation although it was not paid. As such, any overtime wages for which Plaintiff was not paid were and are "wages" as defined by the CWA and therefore subject to the requirements of the CWA.

89. Plaintiff did not receive overtime premiums of one and one-half times her regular rates of pay for hours worked over 40 in individual work weeks and/or 12 in individual work days.

90. Pursuant to C.R.S. § 8-4-109(3)(b)(I), if an employer fails to pay an employee earned, vested, and determinable wages as set forth by the CWA within 14 days of service of a civil action, the employee is entitled to a penalty of two times the amount of unpaid wages or compensation.

91. Pursuant to C.R.S. § 8-4-109(3)(b)(I), if the employee can show that the employer's failure to pay wages due under the Act was willful, the employee is entitled to a penalty of three

times the amount of unpaid wages or compensation.

92. Defendants' failure and refusal to pay earned regular and overtime wages and reimbursements, as demanded herein within the 14-day period described by the C.R.S. § 8-4-109(3)(a), was willful and in bad faith.

93. Plaintiff is owed all earned, unpaid wages, reimbursements, and statutory penalties, including increased penalties for willful violations of the CWA.

94. Plaintiff is also owed wages that she would have earned but for Defendants' illegal suspension of Plaintiff without pay in retaliation for Plaintiff's protected activity under the CWA.

95. Per C.R.S. § 8-4-110, Plaintiff is entitled to attorneys' fees and costs incurred prosecuting claims under the CWA.

### SIXTH CLAIM FOR RELIEF
### COLORADO WAGE ACT – C.R.S. §§ 8-4-120

96. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

97. In direct retaliation for Plaintiff asserting her rights under the CWA as described above, Defendants suspended Plaintiff without pay and then terminated her to discriminate against and punish Plaintiff for questioning Defendants' illegal pay practices including failure to pay all earned wages, namely minimum salary and overtime.

98. Pursuant to C.R.S. § 8-4-120(a), it is illegal for an employer to "intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate or retaliate against any employee who has [f]iled any complaint or instituted or caused to be instituted any proceeding under this article 4 or any other law or rule related to wages [and] hours[.]"

99. Defendants' acts of retaliation against Plaintiff in response to assertion of her lawful CWA rights (*i.e.*, suspension without pay and then termination) violated C.R.S. § 8-4-120(a).

100. Plaintiff is entitled to back pay, reinstatement of employment or front pay, payment of wages unlawfully withheld, interest on unpaid wages at 12% per annum from the date the wages were first due, a penalty of fifty dollars per day for Plaintiff for each day that the violation occurred or continued, liquidated damages in an amount equal to the greater of two times the amount of the unpaid wages or two thousand dollars, and injunctive relief. Plaintiff is also entitled to reasonable attorneys' fees and costs.

### SEVENTH CLAIM FOR RELIEF
### WRONGFUL TERMINATION – VIOLATION OF PUBLIC POLICY[4]

101. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

102. During the course and scope of her employment with Defendants, Plaintiff raised concerns about Defendants' violations of state and federal wage laws.

103. Plaintiff's activity in raising these legitimate concerns involved an exercise of statutory, regulatory, and/or rule-based rights.

104. Plaintiff's activity involved the performance of a public duty relating to her basic responsibilities as a citizen and an exercise of important work-related rights and/or privileges.

105. The proper payment of wages and compliance with federal and state law regarding wage and hour practices are clear mandates of public policy for purposes of establishing a claim for wrongful termination in violation of public policy.

106. Defendants were actually aware that Plaintiff had engaged in protected activity. Minimally, Defendants reasonably should have been aware that Plaintiff had engaged in protected activity.

---

[4] This claim is pleaded in the alternative should the Court determine that there is no comprehensive statutory remedy available to Plaintiff.

15

107. Defendants retaliated against Plaintiff by suspending and then terminating her employment for reporting the violations of law described *supra*.

108. Plaintiff suffered damage as a result of her wrongful termination by Defendants in an amount to be proven at trial for which Defendants are liable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, COMPS Order, and CWA;

b. An injunction requiring Defendants to cease their unlawful practices under, and to comply with, the COMPS Order and CWA;

c. An award of overtime compensation due under the FLSA and the COMPS Order;

d. An award of unpaid, earned, and vested regular and overtime wages, reimbursements, and other amounts under the CWA;

e. An award of wages that Plaintiff would have earned but for Defendants' retaliatory suspension without pay under the FLSA, COMPS Order, and CWA (including four paid holidays);

f. An award of liquidated damages and/or statutory penalties under the FLSA and CWA;

g. An award of additional damages and/or statutory penalties under the FLSA and CWA as a result of Defendants' willful failure to properly pay overtime compensation;

h. An award of damages representing Defendants' share of FICA, FUTA, state

unemployment insurance, and any other required employment taxes;

i. An award of damages for Defendants' unlawful retaliation against Plaintiff for asserting her FLSA rights;

j. An award of damages as and for Defendants' unlawful retaliation against Plaintiff for asserting her rights under the COMPS Order;

k. An award of damages, interest, and injunctive relief as and for Defendants' unlawful retaliation against Plaintiff for asserting her CWA rights;

l. An award of pre-judgment and post-judgment interest at the maximum rate permitted by law;

m. An award of costs and expenses of this action together with attorneys' and expert fees; and

n. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.

Respectfully submitted this 24th day of January, 2025.

/s/ Samuel D. Engelson
Andrew E. Swan
Samuel D. Engelson
LEVENTHAL SWAN TAYLOR TEMMING PC
3773 Cherry Creek North Drive, Suite 710
Denver, Colorado 80209
Telephone: (720) 699-3000
Facsimile: (866) 515-8628
Email: aswan@ll.law
sengelson@ll.law

*Attorneys for Plaintiff*